ed by the judge who originally heard the matter.

PEABODY COAL COMPANY and Old Republic Insurance Company, Petitioners,

v.

Joseph VIGNA and Director, Office of Workers' Compensation Programs, U.S. Department of Labor, Respondents.

No. 93–2346.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1994.

Decided April 18, 1994.

---

Mark E. Solomons, Mark J. Botti (argued), Arter & Hadden, Washington, DC, for petitioners.

Eileen M. McCarthy (argued), Appellate Litigation, Donald S. Shire, Sol. Gen., Marta Kusic, Department of Labor, Office of the Sol., Lisa L. Lahrman, Benefits Review Bd., Executive Counsel, Clerk of the Bd., Washington, DC, for Office of Workers' Compensation Programs, Benefits Review Bd.

Thomas E. Johnson, Leslie A. Jones, Johnson, Jones & Snelling, Chicago, IL, for Joseph Vigna.

Before POSNER, Chief Judge, BAUER, Circuit Judge, and NORGLE, District Judge.[*]

NORGLE, District Judge.

This is a petition for review of an order of the Benefits Review Board of the United States Department of Labor ("Review Board"), which affirmed an administrative law judge's ("ALJ") decision to grant benefits to Joseph Vigna ("Vigna") under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 901, et seq. Petitioners Peabody Coal Company ("Peabody") and its insurance carrier Old Republic Insurance Company ("Old Republic") (collectively "petitioners"), oppose the award of BLBA benefits to Vigna. For the following reasons, we grant the petition and reverse the decision of the ALJ.

## BACKGROUND

Vigna worked as a miner for forty years. Thirty-three of those years were spent working for Peabody. He began his employment with Peabody on September 1, 1938, at the age of twenty-three. Vigna continuously worked in various open pits and strip mines of Peabody until he suffered a stroke at work on June 2, 1971. After the stroke, Vigna was unable to return to work. At the time of Vigna's debilitating stroke, he had been smoking one carton of cigarettes per week for approximately thirty-six years.[1]

On July 18, 1973, two years after Vigna suffered a stroke, he filed a claim for benefits under BLBA. During those two years, Vigna never returned to work for Peabody or engaged in comparable work. In Vigna's claim for benefits, he admitted that he was unable to work since the date of his stroke. In processing Vigna's claim, the United States Department of Labor ("Department of Labor") submitted a form to Vigna's primary treating physician, Dr. John M. Tierney ("Dr. Tierney") requesting a "history of symptoms,

---

[*] Honorable Charles R. Norgle, Sr., of the Northern District of Illinois, Eastern Division, is sitting by designation.

[1] There are fifty-two weeks in a year. We take judicial notice that a carton of cigarettes contains ten packages of cigarettes, and each package of

cigarettes contains twenty cigarettes. Hence, at the time of Vigna's debilitating stroke, he had smoked and inhaled approximately 1,872 cartons of cigarettes, or 18,720 packs of cigarettes, or 374,400 cigarettes.

such as dyspnea, and the clinical course of any cardiopulmonary disease(s), with therapy and response." Pet.App. 44. The form also requested the treating physician to identify "all findings . . . pertinent to the respiratory and cardiovascular systems." *Id.* Dr. Tierney complied with the requests and responded that, with respect to the medical history of Vigna, he had been hospitalized and had been receiving follow-up care for cerebral thrombosis [2] with right hemiparesis [3] and total aphasia,[4] diabetes mellitus,[5] and high blood pressure. With respect to findings pertaining to the respiratory and cardiovascular system, Dr. Tierney identified findings of total right hemiparesis and aphasia since Vigna's cardiovascular accident in June of 1971.

At the request of the Department of Labor, Drs. Francisco J. Tejada ("Dr. Tejada"), N.R. Zenarosa ("Dr. Zenarosa"), and Rodney K. Odgers ("Dr. Odgers") examined Vigna and performed pulmonary function studies ("PFS"). On June 7, 1974, Dr. Tejada examined Vigna with a focus on his pulmonary capacity. The examination and tests resulted in the finding that Vigna's respiratory system functioned normally.[6]

On September 28, 1976, Dr. Zenarosa examined Vigna and observed that Vigna's chest was clear to percussion [7] and auscultation [8] with a slightly slower than normal exhalation. Dr. Zenarosa did not provide any opinion to the Department of Labor as to whether Vigna's impaired physical conditions were related to his employment as a miner.

On April 3, 1979, Dr. Odgers tested Vigna's arterial blood gases and performed a PFS. Dr. Odger's physical examination of Vigna revealed no abnormal auscultatory sound from the carotid and his lungs exhibited few rhonchi.[9] Dr. Odgers concluded from his diagnosis of Vigna that his physical condition and impairment were not caused by the coal dust exposure, but by the cardiovascular accident in 1971.

In addition to the physical examinations and various tests, Vigna has had four different readings of three chest x-rays. All of the x-ray readings, performed in compliance with the Department of Labor standard for reading x-rays in connection with BLBA benefit claims, revealed no evidence of clinical pneumoconiosis.

Nonetheless, on September 12, 1979, the Department of Labor approved Vigna's claim for benefits under BLBA. Subsequently, the Department of Labor notified Peabody and Old Republic of their liability to compensate Vigna for benefits. Peabody and Old Republic contested the decision to award benefits to Vigna and requested a hearing on the matter.

At the request of Peabody, on November 14, 1979, Dr. James J. Burke ("Dr. Burke") conducted an additional examination of Vigna. Dr. Burke took a comprehensive history and conducted a physical examination, an arterial-blood-gas test, and a PFS. After the studies, Dr. Burke concluded that Vigna was suffering from probable pulmonary insufficiency, post-stroke with right hemiparesis, and diabetes mellitus. Dr. Burke, however, did not provide a conclusion as to whether the probable pulmonary insufficiency was caused by coal-dust exposure.

2. A formation of blood clotting in the cerebral hemisphere. Stedman's Medical Dictionary 1449 (5th Lawyer's ed. 1982).

3. A paralysis affecting the right side of the body. *Id.* at 631.

4. The total impairment of one's ability to communicate by writing, speech or signs due to the dysfunction of brain centers in the dominant hemisphere. *Id.* at 96.

5. A metabolic disease, caused by deficiency of insulin, which reduces the body's ability to use carbohydrate, lipid, and protein. *Id.* at 388.

6. The pulmonary function study conducted by Dr. Tejada resulted in non-qualifying results under 20 C.F.R. § 727.203(a)(2).

7. A diagnostic procedure designed to determine the density of a certain portion of the body by tapping the surface of the targeted area with a finger or a plessor. *Id.* at 1052.

8. A diagnostic procedure in which the physician listens to the sounds made by the various body structure. *Id.* at 142.

9. An added sound occurring during inspiration or expiration caused by air passing through bronchi that are narrowed by inflammation or the presence of mucus in the lumen. *Id.* at 1235.

On February 25, 1981, an administrative hearing was held before ALJ V.M. McElroy on the issue of Vigna's claim for BLBA benefits. On May 14, 1982, the ALJ issued a decision and order finding that Vigna was entitled to benefits from January 1, 1974. In reaching that conclusion, the ALJ held that Vigna was entitled to the legal presumption under 20 C.F.R. § 727.203(a)(2). Under § 727.203, "[a] miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... if ... [v]entilatory studies establish the presence of a chronic respiratory or pulmonary disease...." 20 C.F.R. § 727.203(a)(2). The ALJ found that two of the results from the three PFS were low enough to invoke the legal presumption. The ALJ further determined that Peabody and Old Republic failed to rebut that legal presumption.

Peabody and Old Republic appealed the decision of the ALJ to the Review Board. On February 13, 1986, the Review Board affirmed the ALJ's decision to invoke the interim presumption created under § 727.-203(a)(2), but remanded the case because the standard for determining whether the presumption was rebutted under § 727.203(b)(3) changed since the decision of the ALJ in 1982. The Review Board instructed the ALJ to follow the prevailing standard for evaluating rebuttal pursuant to § 727.203(b)(3), which was whether "the employer can show that there is no significant relationship between a miner's total disability and his occupational exposure." Pet.App. 15.

On remand, the ALJ applied the prevailing standard as instructed by the Review Board. Despite the new standard, the ALJ again decided that Vigna was entitled to benefits under BLBA. Furthermore, the ALJ determined that Peabody and Old Republic failed to adduce sufficient evidence to satisfy their burden of demonstrating the absence of a significant causal relationship between Vigna's disability and coal-dust related disease. The ALJ found that Vigna's "pulmonary problems form a significant contribution to [his] disability," Pet.App. 11, and that his pulmonary problems must have been caused by working for Peabody as a miner because there is "no evidence of any other employment." Id.

■ Peabody and Old Republic again challenged the decision of the ALJ before the Review Board. On August 30, 1989, the Review Board affirmed the decision and order of the ALJ awarding BLBA benefits to Vigna. Peabody and Old Republic subsequently filed motions for reconsideration requesting the Review Board to change its prior position and to reverse the decision of the ALJ, but to no avail. Peabody and Old Republic received notice of the Review Board's denial of their motion for reconsideration on April 27, 1993. On June 3, 1993, Peabody and Old Republic timely filed the instant petition for review with this Court, and the Court has proper jurisdiction.[10]

### DISCUSSION

■ Although this petition is an appeal from the decision of the Review Board, we review the decision of the ALJ, rather than the decision of the Review Board. *Freeman United Coal Mining Co. v. Director, Office of Workers' Comp. Programs*, 988 F.2d 706, 709 (7th Cir.1993). This case requires us to address and resolve two primary issues. The first issue is whether the ALJ properly invoked the legal presumption under 20 C.F.R. § 727.203(a)(2) in presuming that Vigna's total disability was due to coal-dust exposure induced pneumoconiosis. The second issue is whether the ALJ erred in determining that Peabody and Old Republic failed to adduce

10. While it is true that the instant petition is filed fifteen months after the Review Board had denied Peabody and Old Republic's motion for reconsideration on March 5, 1992, the instant petition for review is timely filed. Peabody and Old Republic did not receive notice of the Review Board's March 5, 1992 decision until April 27, 1993 due to a mailing error. After receiving the notice of the final decision, Peabody and Old Republic filed this petition within the sixty-day period on June 3, 1993. *See Old Ben Coal Co. v. Jones*, 897 F.2d 900, 902 (7th Cir.1990) (time limitation for appeal of administrative decision suspended until parties properly served); *Arch Mineral Corp. v. Director, Office of Workers' Comp. Programs*, 798 F.2d 215, 219 (7th Cir. 1986) (petition for review under 33 U.S.C. § 921(c) deemed timely if filed within sixty days of the Review Board's denial of motion for reconsideration).

sufficient evidence to rebut the presumption and establish that there is no significant nexus between the total disability and the coal-dust exposure.

■ In reviewing the decision of the ALJ, we must evaluate whether the ALJ's decision is "rational, supported by substantial evidence, and consistent with applicable law." *Zettler v. Director, Office of Workers' Comp. Programs,* 886 F.2d 831, 834 (7th Cir.1989). The ALJ's findings of fact will be affirmed only if they are supported by "such relevant evidence as a rational mind might accept as adequate to support a decision." *Amax Coal Co. v. Beasley,* 957 F.2d 324, 327 (7th Cir. 1992). We cannot reweigh the evidence or make credibility determinations. *Summers v. Freeman United Coal Mining Co., Director, Office of Workers' Comp. Programs,* 14 F.3d 1220, 1223 (7th Cir.1994). Those powers are within the exclusive domain of the ALJ. *Id.* The ALJ, however, does not have plenary discretionary power in evaluating medical evidence. *Peabody Coal v. Director, Office of Workers' Comp. Programs,* 972 F.2d 880, 882 (7th Cir.1992). "[T]he ALJ must consider all relevant medical evidence, cannot substitute his expertise for that of a qualified physician, and absent countervailing clinical evidence of a valid legal basis for doing so, cannot simply disregard the medical conclusions of a qualified physician." *Wetherill v. Director, Office of Workers' Comp. Programs,* 812 F.2d 376, 382 (7th Cir.1987). Furthermore, the ALJ's determinations on questions of law are reviewed *de novo. Keeling v. Peabody Coal Co.,* 984 F.2d 857, 862 (7th Cir.1993).

■ Congress enacted BLBA "to provide benefits, in cooperation with the States, to coal miners who are totally disabled due to pneumoconiosis...." 30 U.S.C. § 901(a). BLBA defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). For a disabled miner to be eligible to recover BLBA benefits, the miner must satisfy the following three elements: (1) that the miner suffers from pneumoconiosis; (2) that his pneumoconiosis arose at least in part out of his coal mine employment; and (3) that his pneumoconiosis caused the total disability. *Shelton v. Old Ben Coal Co.,* 933 F.2d 504, 505 (7th Cir. 1991). "Failure to establish any of these requirements precludes entitlement to [BLBA] benefits." *Id.*

■ Because Vigna's claim was filed on July 18, 1973, between July 1, 1973 and April 1, 1980, the ALJ followed the interim regulations under 20 C.F.R. § 727.203.[11] Pursuant to § 727.203(a), a miner is entitled to the legal presumption that he is totally disabled due to pneumoconiosis if he establishes that he has worked in coal mines for at least ten years and if his medical examination results show the presence of pneumoconiosis. *See* 20 C.F.R. § 727.203(a)(1)–(a)(4). Thus, if the miner is entitled to the legal presumption under § 727.203(a), he essentially establishes all of the necessary elements to be eligible for BLBA benefits. *Freeman United Coal Mining Co. v. Office of Workers' Comp. Program,* 20 F.3d 289, 295 (7th Cir.1994).

The legal presumption, however, may be rebutted by the employer. 20 C.F.R. § 727.203(b). There are four ways to rebut the legal presumption created by subsection (a): (1) demonstrate that the miner is engaged in his usual coal mine or comparable work; (2) that he is capable of performing his usual or comparable duties; (3) that the total disability or death was not wholly or in part caused by coal mine employment; or (4) that the miner does not and did not suffer from pneumoconiosis. 20 C.F.R. § 727.203(b)(1)–(b)(4).

The ALJ found that Vigna was entitled to the legal presumption under subsection (a) that he suffers from pneumoconiosis resulting from his employment with Peabody on the basis that Vigna worked for more than ten years as a coal miner and two of his PFS provided qualifying results. Furthermore, the ALJ found that Peabody and Old Republic failed to adduce sufficient evidence of

**11.** BLBA has progressed through several statutory schemes, creating different applicable rules for claims filed during different time periods. *Old Ben Coal Co. v. Battram,* 7 F.3d 1273, 1275 (7th Cir.1993). Claims filed between July 1, 1973 and April 1, 1980 are subject to the interim regulations promulgated under 20 C.F.R. § 727. *Id.*

rebuttal to establish one of the four subsections of § 727.203(b).

■■■ Petitioners do not dispute that Vigna is totally disabled and that he had worked as a miner for more than ten years. Petitioners maintain, however, that the ALJ erred by invoking the legal presumption based on the 1979 PFS test results, and by finding that petitioners failed to present sufficient evidence to rebut the presumption under § 727.203(b)(3). They contend that the ALJ erred because the ALJ failed to provide reasons for his preference for the April and November 1979 tests over the 1974 PFS test, and that April 1979 test did not have spirometric tracings as required by 20 C.F.R. § 410.430.

We disagree with petitioners that the ALJ erred in invoking the presumption under § 727.203(a)(2). Even if the April 1979 test is non-conforming for consideration by the ALJ, the ALJ could rely on the November 1979 PFS test results in making his decision. The standard is whether the ALJ's factual determination is supported by substantial evidence; not whether the ALJ provided a lucid explanation as to his thought process. The evidence supports the ALJ's determination that Vigna's PFS test results indicated qualifying numbers for the presumption.

Furthermore, there was no evidence contradicting the 1979 test results. The 1974 test does provide results different from the 1979 results; however, those results are not in direct contradiction in light of the passage of five years between the 1974 and 1979 PFS tests. Moreover, the weighing of these test results was within the ALJ's discretion. *Peabody Coal,* 972 F.2d at 882. Thus, we affirm the ALJ's finding that Vigna is entitled to the legal presumption under § 727.-203(a)(2).

■■■ Nevertheless, Vigna is not eligible to receive benefits under the BLBA because the ALJ erred in finding that petitioners failed to rebut the presumption under § 727.-203(b)(3). In order to demonstrate that Vigna's total disability was not wholly or in part caused by exposure to coal dust, petitioners must show by a preponderance of the evidence that black lung disease was not a contributing cause of Vigna's disability. *Amax Coal v. Director, Office of Workers' Comp. Programs,* 993 F.2d 600, 602 (7th Cir.1993). In *Shelton v. Director, Office of Workers' Comp. Programs,* 899 F.2d 690 (7th Cir.1990), we defined "contributing cause" as a cause necessary, but not sufficient, to bring about the miner's disability. *Id.* at 693. Hence, under the facts of this case, the relevant inquiry is whether Vigna would have been totally disabled since 1971 notwithstanding his probable pneumoconiosis.

The evidence undoubtedly evinces that Vigna's pneumoconiosis or his employment at Peabody was not a necessary cause or an event which contributed to Vigna's total disability on June 2, 1971. The medical evidence demonstrates that Vigna was totally disabled after he suffered a stroke on June 2, 1971. Additionally, the medical opinion of Dr. Odgers establishes that the June 1971 stroke was not caused by exposure to coal dust. The readings of the various chest x-rays revealed no evidence of clinical pneumoconiosis. Furthermore, we have recognized in other cases that smoking cigarettes while working as a miner may cause pulmonary complications. *Battram,* 7 F.3d at 1278; *Shelton,* 899 F.2d at 692–93.

On the other hand, aside from the legal presumption under § 727.203(a)(2), there is no direct medical evidence or opinion establishing the nexus between Vigna's 1979 condition and his total disability which occurred in 1971. At the time of the 1979 PFS tests, Vigna had been disabled for eight years. Under these circumstances, the ALJ's decision, that petitioners failed to rebut the presumption by showing the absence of a connection between the possible pneumoconiosis and disability, is not rational and lacks evidentiary support. Vigna's probable pulmonary insufficiency did not cause, or partially cause, his total disability in 1971. The evidence dictates that Vigna's total disability was caused by the stroke which he sustained in 1971.

■■■ The Director of the Office of Workers' Compensation Programs ("Director") and Vigna (collectively "respondents") do not argue that Vigna was not totally disabled in 1971. Rather, they argue that the purpose

of BLBA is to compensate those miners who are inflicted with black lungs as a result of working at coal mines and being exposed to coal dust. This interpretation of BLBA is contrary to the plain reading of BLBA. Section 901(a) of BLBA specifically states that "the purpose of this subchapter [is] to provide benefits ... to coal miners who are *totally disabled due to pneumoconiosis....*" 30 U.S.C. § 901(a). BLBA should not be confused with a state worker's compensation law. BLBA does not compensate miners merely on the basis that they are suffering from black lungs. *See Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, ——, 111 S.Ct. 2524, 2536, 115 L.Ed.2d 604 (1991).

Conceivably, Vigna could have become totally disabled due to the combined effect of cigarette smoking and exposure to coal dust and recover benefits under BLBA. That scenario, however, never precipitated in this case. In 1971, a different ailment disabled Vigna, taking him outside the scope of BLBA. BLBA was not designed to be an umbrella insurance policy for miners in the United States. The limited scope and function of BLBA is to provide financial relief to those miners who are totally disabled due to pneumoconiosis. The rebuttal evidence of Peabody and Old Republic eliminated that portion of the presumption which functioned to satisfy the third element, that the pneumoconiosis caused the total disability. Thus, Vigna failed to satisfy all three elements necessary to recover benefits under BLBA.

## CONCLUSION

For the foregoing reasons, the petition of Peabody and Old Republic is granted and the decision of the ALJ is reversed. Vigna is not entitled to receive benefits under BLBA. The parties will bear their own costs in this court.

REVERSED.