**FREEMAN UNITED COAL MINING CO., Petitioner,**

v.

**William E. FOSTER, et al., Respondents.**

**No. 93–2923.**

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1994.

Decided July 18, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 22, 1994.

Kathryn S. Matkov (argued), Brian M. Shierin, Gould & Ratner, Chicago, IL, for Freeman United Coal Min. Co.

Roscoe C. Bryant, III, Lawrence W. Rogers, Steven D. Breeskin, Jeffrey S. Goldberg, Patricia M. Nece, U.S. Dept. of Labor, Office of Sol., Washington, DC, for Office of Workers Compensation Programs.

Harold B. Culley, Jr., Raleigh, IL (argued), for William E. Foster.

Donald S. Shire, Sol. Gen., Department of Labor, Office of Sol., Lisa L. Lahrman, Bene-

---

fits Review Bd. Executive Counsel, Clerk of Bd., Washington, DC, for Benefits Review Bd.

Before POSNER, Chief Judge, and ESCHBACH and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Is a coal miner, afflicted by non-disabling pneumoconiosis and disabled by an unrelated condition, "totally disabled due to pneumoconiosis" within the meaning of 30 U.S.C. §§ 902(f)(1)(A) and 921? If the answer is yes, then William E. Foster receives black lung benefits—and so does a miner who loses a leg when a coal car rolls over it.

To see how a person disabled by an amputation can collect black lung benefits, it is necessary to work through a chain of definitions and regulations. Congress told the Secretary of Labor to ensure that persons totally disabled by pneumoconiosis receive benefits. 30 U.S.C. § 921(a). The definition of "total disability" in 30 U.S.C. § 902(f) remits us to the Secretary's regulations, but it also requires the regulations to include some presumptions. And there are statutory presumptions as well: any miner suffering from complicated pneumoconiosis is irrebuttably presumed to be totally disabled by that disease. 30 U.S.C. § 921(c)(3); see also *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 22–24, 96 S.Ct. 2882, 2895–96, 49 L.Ed.2d 752 (1976).

The Secretary's definition of "total disability" provides that

(a) A miner shall be considered totally disabled due to pneumoconiosis if:

(1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time (that is, "comparable and gainful work"; see §§ 410.424 through 410.426); and

(2) His impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 410.412. But few miners attempt to prove disability directly. Most rely on presumptions. Foster made his claim for benefits in 1977, so the controlling regulations are those of the "interim presumption" in 20 C.F.R. § 727.203:

(a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title);

(2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in § 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than the values specified in the following table: * * *

(3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than the values specified in the following table: * * *

(4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment;
* * *

(b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable

and gainful work (see § 410.412(a)(1) of this title); or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.

Now let us apply these regulations to the one-legged miner.

Our hypothetical miner has simple pneumoconiosis, which does not prevent him from doing his regular job. An x-ray reading permits this miner to activate the interim presumption under § 727.203(a)(1) even though the ventilatory and blood gas studies to which §§ 727.203(a)(2) and (3) refer do not produce "qualifying" values (that is, do not show functional impairment). The mine operator turns to § 727.203(b), which lists means of rebuttal. Section 727.203(b)(4) is inapplicable, and in any event it may not be used if the miner activates the presumption under § 727.203(a)(1). *Mullins Coal Co. v. Director, OWCP,* 484 U.S. 135, 150, 108 S.Ct. 427, 435, 98 L.Ed.2d 450 (1987). Section 727.203(b)(1) allows rebuttal if the miner is doing his usual work, but our miner is not working. He is unable to work, which renders § 727.203(b)(2) irrelevant. That leaves § 727.203(b)(3), which permits rebuttal if the disability did not arise "in whole or in part out of coal mine employment". But our miner's leg was lost in an accident at work. The handicap arose out of coal mine employment, and § 727.203(b)(3) falls away.

Dissatisfaction with this outcome, which uses a disability unrelated to pneumoconiosis to support an award of black lung benefits, led the Benefits Review Board to turn back to § 727.203(b)(2), which it treated as authorizing rebuttal when the miner is disabled but the disability has no connection to pneumoconiosis. *Sykes v. Amon Coal Co.,* 2 BRL 1–1089 (1980). In *Wetherill v. Director, OWCP,* 812 F.2d 376 (7th Cir.1987), a panel of this court threw cold water on that approach, remarking:

The Board apparently interpreted paragraph (b)(2) to allow rebuttal if the admitted inability to work is caused by a disease other than pneumoconiosis. This interpretation of paragraph (b)(2) seems contrary to its plain language and therefore erroneous. We have previously noted that this interpretation of paragraph (b)(2) was problematic but did not need to resolve the issue because the Board also correctly relied on paragraph (b)(4) in that case. We reiterate that paragraph (b)(2) is probably an improper provision with which to rebut the presumption in a case such as this. Once again, however, there is no need to resolve that question because rebuttal has been accomplished here under paragraph (b)(3).

812 F.2d at 379–80 (citations omitted). Today we cannot escape decision.

Foster, born in 1918, worked in underground coal mines for 26 years, until 1975. In 1972 he suffered a back injury on the job. Three operations left him unable to perform his old work as a driller. Between 1972 and 1975 he worked intermittently at different jobs underground, but finally he gave up. Since 1975 he has been unemployed. An administrative law judge denied Foster's application under the Black Lung Benefits Act. The ALJ concluded that an x-ray taken in September 1986 entitled Foster to the benefit of the § 727.203(a)(1) presumption. Two B-readers interpreted the film as positive for pneumoconiosis; two read it as negative; the ALJ gave Foster the benefit of the draw. (This finding, apparently depending on the "true doubt" rule, is precarious in light of *Director, OWCP v. Greenwich Collieries,* — U.S. —, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994), but the mine operator does not contest the matter.) The ALJ deemed the presumption rebutted under § 727.203(b)(2). It is undisputed that Foster quit because of a back injury. Although Foster testified that he had trouble breathing, the ALJ credited the assessment of Stephen S. LeFrak, Co-Director of Pulmonary Disease and Respiratory Care at the Washington University School of Medicine in St. Louis, that Foster did not have any pulmonary disability. According to Dr. LeFrak, ventilatory and blood gas studies showed normal pulmonary function.

. Shortly before the ALJ issued his decision, we handed down the opinion in *Wetherill.* The Benefits Review Board reversed on the basis of *Wetherill,* instructing the ALJ to reconsider under § 727.203(b)(3). The BRB deemed itself bound by our opinion but added: "We note our disagreement with the Court's holding in Wetherill as it precludes rebuttal under subsection (b)(2) where no respiratory or pulmonary disability has been shown. Such interpretation conflicts with the intent of Congress to provide benefits under this Act for disability due to *pneumoconiosis,* not other disabling conditions." (Emphasis in original.)

On remand, the ALJ disagreed with the BRB's understanding of *Wetherill.* The passage in our opinion addressing § 727.-203(b)(2) was dictum, the ALJ believed, and therefore not binding on the BRB. But the ALJ believed that the instructions remanding the case were binding on him, so he turned to § 727.203(b)(3). That subsection is transparently inapplicable, because Foster's disability arose out of his coal mine employment—he suffered the back injury while performing his duties in the mine. The ALJ added that evidence developed after the remand shows that Foster now has other problems: chronic bronchitis and emphysema, pulmonary impediments that the ALJ found are "related both to coal dust exposure and cigarette smoking." These problems are not themselves disabling, but they show that the state of Foster's health is related to his employment. Cf. *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991) (discussing subsection (b)(3)). As for § 727.203(b)(2), the ALJ observed that Foster could not "do his usual coal mine work or comparable and gainful work," making this method of rebuttal unavailable. This time the BRB affirmed, remarking that, under *Wetherill,* "[i]f total disability is established, subsection (b)(2) rebuttal is precluded".

All of this yields the conclusion that a miner who has simple pneumoconiosis, which would not interfere with his job in the slightest, receives black lung benefits if something else prevents him from working. Once a positive x-ray reading triggers the interim presumption, a finding that the miner is not disabled by pneumoconiosis has no role whatever to play. Yet, as the BRB said in its first decision in this case, the Black Lung Benefits Act is not an all-encompassing disability program. Back injuries on the job are supposed to be handled by workers' compensation programs under state law, or by health and welfare benefit programs under collective bargaining agreements and ERISA. The Black Lung Benefits Act treats complex pneumoconiosis as a special case, bestowing benefits even if the miner still can work (or is disabled by an unrelated condition). The outcome of this case suggests, however, that the irrebuttable presumption arising out of complex pneumoconiosis does not function much differently from the interim presumption arising out of a single positive x-ray reading.

According to the BRB, *Wetherill* is to blame. The BRB believes that when a miner has pneumoconiosis and is disabled, but not by the pneumoconiosis, rebuttal should be allowed under § 727.203(b)(2). As the ALJ pointed out, the panel in *Wetherill* explicitly did *not* decide this question. Having found rebuttal under (b)(3), it did not need (and did not purport) to come to rest on the interpretation of (b)(2). But the analysis of *Wetherill* cannot be ignored. The panel believed that the plain language of part (b)(2) precludes the Board's reading. Other courts of appeals have announced the same conclusion. *Sykes v. Director, OWCP,* 812 F.2d 890, 893–94 (4th Cir.1987); *York v. BRB,* 819 F.2d 134, 137 (6th Cir.1987); *Robbins v. Jim Walter Resources, Inc.,* 898 F.2d 1478, 1483 (11th Cir. 1990). We do not believe that the language is at all "plain," however.

Part (b)(2) permits rebuttal of the interim presumption if "[i]n light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title)". The language looks like a reference to disability pure and simple until we consider the cross-reference, which sends us to a regulation (already quoted) defining total disability caused *by pneumoconiosis.* One could reply, we suppose, that § 410.412(a)(1) is just a definition of "total disability" that

does not specify a causal link between the disability and the pneumoconiosis. If that is *really* what part (b)(2) and the cross-reference are doing, however, then the outcome is so at odds with the statute that it would be hard to sustain. The alternative is to understand § 727.203(b) as a whole as reflecting an understanding that the goal, in the language of the statute, is to identify and compensate "total disability due to pneumoconiosis" while remitting to other statutes (or to private insurance) disability attributable to other causes. Anything else collapses simple and complex pneumoconiosis, which Congress carefully distinguished. Understanding the context of part (b)(2) and § 410.412(a), and the part they play in a larger structure, is vital.

> Statutes have meanings, sometimes even "plain" ones, but these do not spring directly from the page. Words are arbitrary signs, having meaning only to the extent writers and readers share an understanding. A mark such as ↑ has a meaning without language, but "up" must be decoded according to rules and cultural norms. Language in general, and legislation in particular, is a social enterprise to which both speakers and listeners contribute, drawing on background understandings and the structure and circumstances of the utterance. Slicing a statute into phrases while ignoring their contexts—the surrounding words, the setting of the enactment, the function a phrase serves in the statutory structure—is a formula for disaster.

*Herrmann v. Cencom Cable Associates, Inc.,* 978 F.2d 978, 982 (7th Cir.1992). Regulation 410.412(a) *begins* "A miner shall be considered totally disabled due to pneumoconiosis if ...", and subsection (a)(1) continues "[h]is pneumoconiosis prevents him from...." See also 30 U.S.C. § 901(a) ("[T]he purpose of this subchapter [is] to provide benefits ... to coal miners who are totally disabled due to pneumoconiosis"). One cannot understand the criteria in § 410.412(a)(1) as if they had nothing to do with a causal link between the pneumoconiosis and the disability.

Whether persons who have pneumoconiosis and are disabled, but not *by* the pneumoconiosis, should get black lung benefits, is easier to answer than is the question whether persons who have multiple disabilities are entitled to benefits. Recently we held that a miner disabled by a stroke does not qualify for benefits, even if he also suffers from pneumoconiosis that would have precluded him from working in the absence of the stroke. *Peabody Coal Co. v. Vigna,* 22 F.3d 1388 (7th Cir.1994). We have also said that when a pulmonary disability has multiple causes—for example, coal dust and cigarette smoke—the miner does not collect black lung benefits if he would have been unable to work even had he never been exposed to coal dust. *Shelton v. Director, OWCP,* 899 F.2d 690, 693 (7th Cir.1990). When coal dust contributes to a disabling pulmonary disability, the miner receives black lung benefits; but if cigarette smokers' emphysema would have precluded work even if the person had never been in a mine, black lung benefits should not be awarded whether or not the miner has simple pneumoconiosis. These joint-cause and multiple-cause cases have been perplexing. How does one handle counterfactual inquiries? Physicians may not know what would have happened had coal dust not been a factor. Cases such as *Hawkins v. Director, OWCP,* 907 F.2d 697, 704 n. 11 (7th Cir.1990); *Peabody Coal Co. v. Director, OWCP,* 778 F.2d 358 (7th Cir.1985); and *Old Ben Coal Co. v. Prewitt,* 755 F.2d 588 (7th Cir.1985), accordingly hold that if a miner's pneumoconiosis alone is disabling, the fact that the miner has some additional and potentially disabling condition does not preclude an award of black lung benefits. But the case of a miner who could work despite his pneumoconiosis, and who is disabled by a condition unrelated to coal dust, is easier than any of these joint-cause and multiple-cause cases. We do not have to answer counterfactual questions, for we *know* that Foster worked normally until he injured his back, and the ALJ found that his pneumoconiosis did not disable him as of the date of the hearing. Putting § 727.203(b) aside, it is linguistically impossible to say that such a person is totally disabled by pneumoconiosis, and nothing in the text or structure of the statute suggests that Congress has directed mine operators to pay benefits in such cases.

A regulation *seeming* to have that effect need not be understood mechanically, when the mechanical reading implies invalidity. The better way to read subsection (b)(2) is as the BRB initially read it: to say that the cross-reference invites us to consider not only the miner's ability to do his old job but also whether inability to work is traceable to coal dust.

Cases in this circuit since *Wetherill* have repeated its observations but like *Wetherill* itself have stopped short of turning those remarks into a holding. E.g., *Peabody Coal Co. v. Shonk*, 906 F.2d 264, 269 (7th Cir.1990) ("the proper inquiry ... *seems to be* whether *any* impairment prevented a miner from doing his usual job") (first emphasis added); *Freeman United Coal Mining Co. v. BRB*, 912 F.2d 164, 171 n. 5 (7th Cir.1990) (*Wolfe*) ("In *Wetherhill* [sic], this court deferred determination of the requisite standards for establishing Subsection (b)(2) rebuttal. 812 F.2d at 379–80. The issue has not since been resolved."). We conclude that the dictum in *Wetherill* should not become a holding, and that the ALJ was right the first time in allowing rebuttal under part (b)(2).

Given the opinions from the fourth, sixth, and eleventh circuits cited above, our decision seems to create a conflict among the circuits. But it may well be that there is no conflict—that the opinions in the other circuits are no more definitive than was *Wetherill* itself. For example, although in *York v. BRB* the sixth circuit announced that part (b)(2) does not allow the employer to rebut the presumption by showing that the miner's disability has a cause other than pneumoconiosis, in *Neace v. Director, OWCP*, 867 F.2d 264, 269 (6th Cir.1989), the same court added a vital qualification: things might be otherwise if the disabling condition were not a *respiratory* impairment. Other cases in this vein (including our own opinion in *Wolfe*, which cited *York* and *Sykes* with apparent approval) involve claims that some other pulmonary condition—for example, emphysema—was the "real" source of the miner's disability. As we emphasized above, dual-cause or multiple-cause cases are much more difficult than the one we consider. Post–

*Wetherill* cases in our own court, including *Wolfe* and *Freeman United Coal Mining Co. v. OWCP*, 20 F.3d 289, 296–97 (7th Cir.1994) (*Forsythe*), contain passages based on the language in *Wetherill.* When several panels explicitly reserve an issue, later decisions reciting language from the earlier opinions, but not adding any analysis, cannot be said to close the book on the question. We believe that a disabling condition *unrelated* to pulmonary problems may overcome the interim presumption, and we doubt that other circuits would disagree. Although it quoted from *Sykes*, the panel in *Wolfe* also wrote that "[a]n award of benefits under the Act means that the claimant has shown that he is (1) totally disabled (2) due to pneumoconiosis (3) caused by his coal mining employment." 912 F.2d at 167–68. We do not think that the judges who participated in *Wolfe* and *Forsythe*, or our colleagues in other circuits, really believe that § 727.203(b) has written requirement (2) out of the Act.†

The ALJ's first opinion was rendered on the assumption that § 727.203(b)(2) permitted the employer to show that the miner's disability was unrelated to pneumoconiosis. Substantial evidence supports the decision to deny the miner's request. Foster worked until his back injury. The medical records submitted at the first hearing led the ALJ to find that Foster had no pulmonary impairment of any kind. Additional medical records submitted after remand led to the conclusion that Foster suffers from chronic bronchitis and emphysema, but the ALJ did not find that these conditions would be disabling independent of the back injury. Foster suffered a back injury and is entitled to workers' compensation plus any other medical benefits his employer contractually agreed to supply. He is not disabled by pneumoconiosis and is not entitled to benefits under the Black Lung Benefits Act. We grant the petition for review and set aside the Board's order.

---

† Notwithstanding this observation, we have circulated this opinion to all active judges before release under Circuit Rule 40(f). A majority did not favor a hearing en banc. Judges Cudahy and Ripple voted to hear the case en banc.