# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-2734

MIDLAND COAL COMPANY and
OLD REPUBLIC INSURANCE COMPANY,

*Petitioners*,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,
and GEORGE W. SHORES,

*Respondents.*

———————

Petition for Review of Decision and Order
of the Benefits Review Board,
United States Department of Labor, BRB No. 01-0316.

———————

ARGUED APRIL 18, 2003—DECIDED FEBRUARY 18, 2004

———————

Before EASTERBROOK, KANNE, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* George W. Shores worked for Midland Coal Company as a miner for 26 years. He now suffers from a variety of respiratory and pulmonary problems. On three separate occasions, he was unsuccessful in his efforts to obtain benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.* His luck changed the fourth

time around when an administrative law judge (ALJ) ruled in his favor and the Benefits Review Board affirmed. Midland now appeals.

## I

Shores worked for Midland as a coal miner from 1954 until his retirement in 1982. Much of his time was spent above ground working as a welder at strip or surface mines, but even there, he was exposed to substantial amounts of coal dust. He also smoked for some thirty years, but he quit in 1971, eleven years before he retired. When Shores began to suffer from various respiratory problems, he applied for benefits under the Black Lung Benefits Act. He was rejected three times, in 1981, 1994, and 1996. Meanwhile, his respiratory symptoms worsened and his overall health deteriorated. Shores suffered his third heart attack in 1997, and in 1998 he applied for benefits for a fourth time.

This time, the ALJ relied on the duplicate-claim provisions of 20 C.F.R. § 725.309(d)(4) and found that there had been a material change in condition that justified an award of benefits. In reaching that conclusion, the ALJ had to decide which of the eight medical opinions before him were persuasive. He rejected five opinions for various flaws: Dr. Marder (understating Shores's smoking history), Drs. Dengelman, Shima, and Sanchez (black lung disease mentioned only in passing), and Dr. Dababneh (no explanation for the medical basis of his conclusion). Of the three remaining physicians, Drs. Skillrud and Selby concluded that Shores did not have an impairment related to coal-dust exposure, but instead suffered only from simple asthma. Dr. Cohen, in contrast, found that Shores was suffering from pneumoconiosis.

The ALJ decided that Dr. Cohen's opinion was the best-reasoned of the three that were worthy of consideration, largely because Drs. Skillrud and Selby had relied on an

unduly narrow definition of pneumoconiosis by requiring chest x-ray evidence of coal-dust exposure. This, the ALJ noted, was a standard component of a medical diagnosis, but was merely one of several ways to establish eligibility for benefits under the "legal" or "regulatory" definition of the ailment. See 20 C.F.R. § 718.202. In addition, the ALJ found that the two nay-saying physicians had not integrated all of the objective evidence as well as Dr. Cohen had done, particularly test results showing diffusion impairment, reversibility studies, and blood-gas readings. The ALJ concluded that Shores had met the requirements for an award of benefits; the Board affirmed, and Midland now appeals.

## II

Midland offers two ambitious arguments at the outset, but both fall short. Because they involve purely legal propositions, our review is *de novo. Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 478 (7th Cir. 2001).

Midland first urges that Shores's claim for benefits was barred on *res judicata* grounds. It argues that nothing in the Act overrides ordinary principles of finality and claim preclusion or authorizes the re-filing of claims that have finally been denied after an opportunity for a full and fair adjudication. This is not, however, an accurate statement of the special preclusion rules that apply in this area. At the time of Shores's fourth filing, an *en banc* decision of this court had interpreted the regulations contained at 20 C.F.R. § 725.309 to the contrary, squarely holding that traditional principles of *res judicata* do *not* bar a subsequent application for black lung benefits where a miner demonstrates a material change in at least one of the conditions of entitlement. See *Peabody Coal Co. v. Spese*, 117 F.3d 1001, 1008-09 (7th Cir. 1997) (*en banc*). And while it is true that *Spese* interpreted an earlier version of § 725.309, and that the

new version does not have retroactive effect, see 20 C.F.R. § 725.2(c), the revised regulations explicitly codified the holding of *Spese*. See 65 Fed. Reg. 79,920, 79,974 (Dec. 20, 2000). Midland's general claim of preclusion is therefore without merit.

Midland also assaults the ALJ's finding that pneumoconiosis can be progressive and latent. The ALJ relied on the implementing regulation set forth at 20 C.F.R. § 718.201(c), which recognizes pneumoconiosis "as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." The Department of Labor adopted this regulation after Shores filed his fourth application for benefits; it was to take effect on January 19, 2001.

Whether pneumoconiosis (including the condition described for these purposes as "legal" pneumoconiosis) is a disease that can be latent and progressive is a scientific question. The Department of Labor's regulation reflects the agency's conclusion on that point. Midland is now challenging that scientific finding, but we see no reason to substitute our scientific judgment, such as it is, for that of the responsible agency. Prior to the adoption of § 718.201(c), this court repeatedly noted that it would credit the position adopted in benefits proceedings by the Department of Labor on the progressivity and latency question, unless the mine operators produced the type and quality of medical evidence that would invalidate a regulation. See *Old Ben Coal Co. v. Scott*, 144 F.3d 1045, 1048 (7th Cir. 1998); see also *Spese*, 117 F.3d at 1010; *Freeman United Coal Mining Co. v. Hilliard*, 65 F.3d 667, 669-70 (7th Cir. 1995).

At that time, because the agency had not gone through formal rule-making procedures, this deference was not compelled under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), but it was appropriate under *United States v. Mead Corp.*, 533 U.S. 218,

234-35 (2001). See *Alaska Dep't of Envtl. Conservation v. EPA*, 2004 WL 86284, at \*16 (U.S. Jan. 21, 2004); *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003). Now that the agency has issued a formal regulation using full notice-and-comment procedures, *Chevron* imposes on the mine operators the heavy burden of showing that the agency was not entitled to use its delegated authority to resolve the scientific question in this manner. Midland has not undertaken to show why the Department's conclusion was not itself supported by substantial evidence (a somewhat different question from whether it had the authority to adopt a general rule on the point). Unless and until Midland did so, Shores was fully entitled to rely on the rule without the need to prop it up by introducing yet more independent scientific evidence tending to show that it is scientifically valid. We note as well that our colleagues in the D.C. Circuit concluded in *National Mining Association v. Department of Labor*, 292 F.3d 849, 863 (D.C. Cir. 2002), that § 718.201(c) was entitled to retroactive application.

Taking a more modest tack, Midland also argues that a claimant must now show that she suffers from one of the particular kinds of pneumoconiosis that are likely to manifest latent and progressive forms. Midland gleans this new requirement from the D.C. Circuit's *National Mining Association* opinion. Along the way to upholding § 718.201(c), the court noted that the Secretary of Labor had acknowledged that "latent and progressive pneumoconiosis is rare, occurring in a small percentage of cases by all accounts." 292 F.3d at 863. Midland interprets this language as a positive command that a claimant bringing a subsequent application must prove that she suffers from the particular kinds of pneumoconiosis that have been found in the medical literature to be progressive and/or latent. But that is not what the D.C. Circuit said, and more importantly, the regulation itself is not so limited. The rule is

instead designed to "prevent[ ] operators from claiming that pneumoconiosis is *never* latent and progressive." *Id.*

### III

Midland also argues that the ALJ's decision was in any event not supported by substantial evidence. Here, we apply the familiar rule that requires us to uphold the ALJ's findings if they are supported by relevant evidence that a " 'rational mind might accept as adequate to support a conclusion.' " *Amax Coal Co. v. Beasley*, 957 F.2d 324, 327 (7th Cir. 1992) (quoting *Peabody Coal Co. v. Helms*, 859 F.2d 486, 489 (7th Cir. 1988)).

In order to be entitled to an award of benefits, a claimant must prove (1) a totally disabling form of (2) pneumoconiosis (3) caused by coal mine employment. See *Pittston Coal Group v. Sebben*, 488 U.S. 105, 114 (1988). In addition, in order to proceed on a subsequent claim, a claimant must show that her condition has changed with respect to at least one of the elements of entitlement. See 20 C.F.R. § 725.309; *Spese*, 117 F.3d at 1008; *Sahara Coal Co. v. OWCP*, 946 F.2d 554, 556 (7th Cir. 1991). A claimant may not show a material change by presenting new evidence that merely addresses her condition at the time of the earlier denial. *Hilliard*, 65 F.3d at 669; *Spese*, 117 F.3d at 1008.

Midland first attacks the ALJ's decision to credit the positive diagnosis of Dr. Cohen and to discount the contrary diagnoses of Drs. Skillrud and Selby. Shores relied on physician opinion to establish the existence of pneumoconiosis, which is one of the ways permitted in 20 C.F.R. § 718.202(a)(4). As a result, the ALJ's decision to credit the opinion of Dr. Cohen over that of the other physicians was a pivotal one, since Shores was unable to point to either of the other two acceptable forms of evidence, biopsy evidence, 20 C.F.R. § 718.202(a)(2), or positive x-rays, 20 C.F.R. § 718.202(a)(1), and was ineligible for the regulatory pre-

sumptions set forth at 20 C.F.R. §§ 718.202(a)(3) and 718.305. Midland's argument here is that the ALJ impermissibly rejected the opinions of Drs. Skillrud and Selby because they were based on a medical philosophy inconsistent with the Act, rather than because of their scientific reliability.

Midland fails to acknowledge, however, that this court has "'allow[ed] an ALJ to disregard medical testimony when a physician's testimony is affected by [her] subjective personal opinions about pneumoconiosis which are contrary to the congressional determinations implicit in the Act's provisions.'" *Blakley v. Amax Coal Co.*, 54 F.3d 1313, 1321 (7th Cir. 1995) (quoting *Pancake v. Amax Coal Co.*, 858 F.2d 1250, 1257 (7th Cir. 1988)); see also *Lane v. Union Carbide Corp.*, 105 F.3d 166, 173 (4th Cir. 1997) ("[A] physician's opinion based on a premise 'antithetical' to the Act is not probative."). In *Blakley*, we specifically noted that a medical opinion can be discredited as hostile where "a physician states that he will never diagnose the existence of pneumoconiosis in the absence of a positive x-ray." 54 F.3d at 1321. This is precisely the reason advanced by the ALJ in support of his decision to credit the opinion of Dr. Cohen over that of Dr. Skillrud. The ALJ discounted Dr. Selby's opinion for similar reasons: that Dr. Selby referenced parts of the medical literature that deny that coal dust exposure can ever cause pneumoconiosis, that Dr. Selby "stressed" the absence of chest x-ray evidence, and that Dr. Selby's reliance on the absence of pulmonary problems at the time of Shores's retirement from coal mining in 1982 is contrary to the notion that pneumoconiosis is a progressive disease.

The question remains, however, whether the opinions of Drs. Skillrud and Selby were so compelling that the only permissible choice for the ALJ was to rely on them. We think not. For example, the ALJ based his conclusion that Dr. Skillrud was insisting on x-ray evidence on Dr. Skillrud's citation of a study from the medical literature

finding that "significant airways obstruction is indeed rare in coal miners in the absence of progressive massive fibrosis or cigarette smoking." The ALJ reasoned that, because massive fibrosis can only be diagnosed via x-ray evidence, Dr. Skillrud's statement was equivalent to a finding that pneumoconiosis is not diagnosable without x-ray evidence. Such a position is contrary to the Act's allowance of means other than radiographic evidence to establish the existence of the disease. We agree with Midland that it is possible to understand Dr. Skillrud's statement in a different way, namely, simply as support for his conclusion that it was Shores's smoking history, and not pneumoconiosis, that was causing his obstructive impairment. Nevertheless, on substantial evidence review we would have to find that the latter interpretation was the only permissible one, not that it was one of several. In that light, the ALJ's inference of hostility to the Act was permissible.

The ALJ decided to discount Dr. Selby's opinion for several reasons: his reference to the absence of medical literature supporting the proposition that coal dust exposure can cause pneumoconiosis, his emphasis on the absence of chest x-ray evidence, and his reliance on the absence of pulmonary problems at the time of Shores's retirement from coal mining in 1982. Each of these points, the ALJ concluded, runs contrary to the notion that pneumoconiosis is a progressive disease. Once again, we do not disagree with Midland that the better reading of Dr. Selby's opinion might be merely that latent or progressive pneumoconiosis is rare. Furthermore, Midland may be correct that the ALJ's treatment of the relative contribution to the disease made by Shores's former smoking and his exposure to coal dust could have been more careful. Dr. Selby thought that cigarettes, and not coal dust, were the most likely cause of Shores's obstructive impairment, but the ALJ criticized this finding because it did not confront the fact that Shores quit smoking in 1971, more than a decade before his retirement.

Nevertheless, the record as a whole shows that the ALJ was within bounds when he chose to credit the opinion of Dr. Cohen over those of Drs. Skillrud and Selby. As the ALJ pointed out, Dr. Cohen did a better job of integrating *all* of the available evidence—particularly blood-gas test results showing significant diffusion impairment as well as test results showing little reversibility, both of which tend to disprove bronchial asthma—and he also had the advantage of reading through, commenting on, and specifically refuting the alternate diagnoses of both Dr. Skillrud and Dr. Selby. Even if another finder of fact might have made the opposite choice, the ALJ's decision to credit the opinion of Dr. Cohen was supported by substantial evidence that a rational mind might accept as adequate. See *Summers*, 272 F.3d at 483.

Midland next attacks the ALJ's finding that Shores established a material change in at least one condition of entitlement. See 20 C.F.R. § 725.309. It suggests that Dr. Cohen's opinion establishes only that Shores had pneumoconiosis all along, and that this is insufficient to establish the requisite material change under § 725.309. Our problem with this line of argument is that a finding that Shores had *some* degree of pneumoconiosis all along would not necessarily undercut an award of benefits in this case. As the ALJ noted, a claimant can show a material change in either of two ways: by proving that he " 'did not have black lung disease at the time of the first application but has since contracted it and become totally disabled by it,' " or that " 'his disease has progressed to the point of becoming totally disabling although it was not at the time of the first application.' " See *Spese*, 117 F.3d at 1007 (quoting *Sahara Coal Co.*, 946 F.2d at 556). Either showing would suffice here because Shores was unable to prove any of the elements of entitlement in his 1996 benefits application. See 20 C.F.R. § 725.309(d)(2); *Spese*, 117 F.3d at 1009. It follows that a finding that Shores is now totally disabled by pneumoconio-

sis is sufficient to find a material change in Shores's condition, whether that finding reflects a change from no disease at all to a totally disabling condition, or it rests on a change from a mild form of the disease to a totally disabling condition. Whether Dr. Cohen thought that Shores has been suffering from some form of pneumoconiosis all along is therefore not necessarily dispositive of this appeal. We agree with the Department of Labor that at a minimum there is substantial evidence to show material change in the "total disability" element of the inquiry.

Midland's third and final argument is that substantial evidence does not support the ALJ's finding that Shores proved total disability. A miner is "totally disabled" within the meaning of the statute and implementing regulations if

> the miner has a pulmonary or respiratory impairment which, standing alone, prevents or prevented the miner:
>
> > (i) From performing his or her usual coal mine work; and
> >
> > (ii) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time.

See 20 C.F.R. § 718.204(b)(1); see also *Poole v. Freeman United Mining Co.*, 897 F.2d 888, 893-94 (7th Cir. 1990). In addition, "[i]n determining whether total disability has been established, an ALJ must consider all relevant evidence on the issue of disability including medical opinions which are phrased in terms of total disability or provide a medical assessment of physical abilities or exertional limitations which lead to that conclusion." See *Poole*, 897 F.2d at 894. The claimant has the burden of proving total disability by a preponderance of the evidence. See 20 C.F.R. § 725.103; 65 Fed. Reg. 79,920, 79,935 (Dec. 20, 2000) (citing *Dir., OWCP v. Greenwich Collieries*, 512 U.S. 267, 281 (1994)).

Midland first claims that there was insufficient evidence in the record to support the conclusion that Shores's pneumoconiosis prevents him from working. Shores relied on 20 C.F.R. § 718.204(b)(2)(iv), which allows a claimant to establish the "total disability" element "if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents *or prevented* the miner from engaging in [her usual coal-mining work or other comparable employment]." (Emphasis added.) Dr. Cohen, however, provided the necessary evidence. He both stated his knowledge of the physical efforts that Shores's last coal-mining job required and related those efforts to his diagnosis of Shores's impairment. This is sufficient to meet the requirements of § 718.204(b)(2)(iv). See *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 577-78 (6th Cir. 2000). *Cf. Lane*, 105 F.3d at 172.

Midland's other argument is that Shores cannot show the requisite "total disability" because his affliction by a variety of non-respiratory, non-pulmonary ailments— including his advanced age (83), history of three heart attacks, severe coronary artery disease, prostate cancer, degenerative joint disease, and peptic ulcer disease—would now prevent him from working as a coal miner in any event. Midland points to several decisions of this court that seem to suggest as much. See, *e.g.*, *Freeman United Coal Mining Co. v. Foster*, 30 F.3d 834, 839 (7th Cir. 1994) (claimant disabled by back injury not entitled to black lung benefits); *Peabody Coal Co. v. Vigna*, 22 F.3d 1388, 1394 (7th Cir. 1994) (miner disabled by stroke not entitled to black lung benefits); *Shelton v. Dir., OWCP*, 899 F.2d 690, 693 (7th Cir. 1990) (remanding, but suggesting that a miner disabled by pulmonary disease unrelated to coal mining not entitled to black lung benefits); *Wetherill v. Dir., OWCP*, 812 F.2d 376, 382-83 (7th Cir. 1987) (miner disabled by heart disease not entitled to black lung benefits). In rejecting benefits claims or remanding for

further inquiry, these cases rely on the "contributing cause" formulation, under which pneumoconiosis must be "necessary, but not sufficient, to bring about the miner's disability." *Vigna*, 22 F.3d at 1394; *Shelton*, 899 F.2d at 693. Midland also leans heavily on the following *dictum* from *Meyer v. Zeigler Coal Co.*, 894 F.2d 902, 908 (7th Cir. 1990):

> Eventually, every coal miner, whether [he] suffer[s] from pneumoconiosis or not, will no longer be able to engage in the level of coal mining or comparable work as [he]could when [he was] younger. However, the Act does not compensate disability due to age, it compensates disability due to pneumoconiosis caused by coal mining.

*Meyer*, 894 F.2d at 908.

While snippets of these decisions may seem to support Midland, in the end they do not control. For one thing, all of these cases considered benefits claimants prior to the 1997 amendments to § 718.204(a). The new regulations exclude from the determination of total disability all evidence of non-pulmonary or non-respiratory conditions:

> For purposes of this section, any nonpulmonary or nonrespiratory condition or disease, which causes an independent disability unrelated to the miner's pulmonary or respiratory disability, shall not be considered in determining whether a miner is totally disabled due to pneumoconiosis. If, however, a nonpulmonary or nonrespiratory condition or disease causes a chronic respiratory or pulmonary impairment, that condition or disease shall be considered in determining whether the miner is or was totally disabled due to pneumoconiosis.

20 C.F.R. § 718.204(a). This language plainly excludes consideration of old age in making the total disability determination (and thus ensures that mine operators are not rewarded by dragging out litigation until the miner would

be too old to perform his prior work in any event, or even deceased). The D.C. Circuit saw the new regulation as an explicit rejection of this court's position, commenting in *National Mining Association* that the amendment of § 718.204(a) "changes the legal landscape by precluding adjudicators from considering unrelated medical disabilities, reversing the rule in the Seventh Circuit, and precluding any other circuit from adopting the Seventh Circuit's interpretation." 292 F.3d at 864.

We are not so sure that the amendment was such a pointed reaction to our earlier decisions, even though the commentary accompanying the amendments to § 718.204(a) indicated that the changes were designed "to ensure that the Seventh Circuit's view will not be applied outside that circuit to cases arising under part 718." See 62 Fed. Reg. 3,338, 3,345 (Jan. 22, 1997). More importantly, that same commentary acknowledged that the claimant in *Vigna* proceeded under the now-defunct interim presumption system previously set forth at 20 C.F.R. § 727.203. *Id.* See also *Foster*, 30 F.3d at 835 (relying on the interim presumption established in 20 C.F.R. § 727.203); *Wetherill*, 812 F.2d at 378-79 (same). Under that system, if a benefits claimant could establish a presumption of total disability under the regulations, the mine operator could rebut the presumption by showing, *inter alia*, that "the individual is able to do his usual coal mine work," 20 C.F.R. § 727.203(b)(2), or "the total disability . . . did not arise in whole or in part out of coal mine employment," *id.* § 727.203(b)(3). From the Department of Labor's perspective, it was worth clarifying that the rule this court was applying to interim presumption cases would not be carried forward to § 718 cases.

It is true that in *Shelton*, we considered a claim under § 718 and stated that pneumoconiosis must be necessary, but need not be sufficient, to establish total disability. 899 F.2d at 693. We have no need here to decide whether

there is any tension between *Shelton* and the amended version of § 718.204(a). Most of the cases in this circuit that adopt the necessary-but-not-sufficient formulation involved claimants who suffered from totally disabling non-pulmonary, non-respiratory ailments and also claimed affliction by pneumoconiosis that was either not supported by medical evidence or that had been declared insufficiently severe, whether by itself or in combination with the non-respiratory, non-pulmonary ailments, to render the miner totally disabled. See *Foster*, 30 F.3d at 838; *Vigna*, 22 F.3d at 1394; *Wetherill*, 812 F.2d at 382-83. These cases stand at most for the proposition that non-disabling forms of pneumoconiosis cannot form the basis for an award of benefits where that disease is neither a necessary nor a sufficient component of the miner's disability. In *Shelton*, the court held that benefits are due when the black lung disease is a necessary, though not necessarily sufficient, cause of the miner's total disability. There was no need to consider another variation in that opinion—the one in which mining and something else were each sufficient, but not necessary, conditions of the total disability. 899 F.2d at 693.

That problem, however, had been addressed in *Amax Coal Co. v. Director, OWCP*, 801 F.2d 958 (7th Cir. 1986), where we recognized that "'[t]he concurrence of two sufficient disabling medical causes, one within the ambit of the Act, and the other not, will in no way prevent a miner from claiming benefits under the Act,'" *id.* at 963 (citing *Peabody Coal Co. v. Dir., OWCP*, 778 F.2d 358, 363 (7th Cir. 1985)). See also *Hawkins v. Dir., OWCP*, 907 F.2d 697, 704 n.11 (7th Cir. 1990) (noting that the "dual-cause issue" was not before the court in *Shelton* and so it did not overrule *Amax* or *Peabody*). Moreover, our decision in *Foster* explicitly distinguished these "joint cause" cases, in which a miner suffers from a totally disabling form of pneumoconiosis and is also afflicted by other disabling conditions, and cases in which a miner could work despite his pneumoconiosis but is otherwise disabled by a condition unrelated to coal dust.

*Foster*, 30 F.3d at 838; see also *Vigna*, 22 F.3d at 1395; *Shelton*, 899 F.2d at 693.

In short, one can imagine four different scenarios. First, in cases in which pneumoconiosis is both necessary and sufficient to the miner's disability—that is, where pneumoconiosis is unaccompanied by any other disabling condition—a miner who satisfies the other elements of entitlement will receive benefits. Second, a miner whose pneumoconiosis is necessary but not sufficient—perhaps because her non-disabling pneumoconiosis, when combined with another condition that is also not by itself disabling, renders her totally disabled—is also entitled to benefits, again so long as she can establish the other statutory elements. Third, a miner whose pneumoconiosis is neither necessary nor sufficient to her disability—that is, she does not suffer from pneumoconiosis, or her mild pneumoconiosis is accompanied by a totally disabling non-respiratory and non-pulmonary condition—will not receive benefits. Finally, we have the situation of a miner whose pneumoconiosis is sufficient, but not necessary, to render her totally disabled. In such a case, the miner suffers from multiple conditions, including those related to exposure to coal dust and those that are not, that are each independently sufficient to render the miner totally disabled. As we said in *Amax*, the sufficiency of the pneumoconiosis is enough, given the purposes of this Act, to support an award of benefits in this situation as well.

Shores fits under either scenario 2 or scenario 4, depending on how one chooses to view his other ailments. The important point, however, is the ALJ's finding that Shores's pneumoconiosis is by itself totally disabling. This is enough to meet the requirements of § 718.204, even if Shores also suffers from non-pulmonary and non-respiratory disabilities that would also be sufficient to render him unable to work. See *Amax Coal*, 801 F.2d at 963; *Peabody Coal*, 778 F.2d at 363. We therefore find that the evidence supports the ALJ's

conclusions here.

## IV

For the reasons stated above, the Board's order is EN-FORCED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—2-18-04