In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-1248

ZEIGLER COAL COMPANY,

*Petitioner*,

and,

ST. PAUL TRAVELERS INSURANCE
COMPANY,

*Intervening Petitioner*,

*v.*

OFFICE OF WORKERS' COMPENSATION
PROGRAMS, United States Department
of Labor, and EDWARD GRISKELL,

*Respondents*.

———————

Petition for Review of an Order
of the Benefits Review Board.
No. 04-BLA-0404

———————

ARGUED JANUARY 4, 2007—DECIDED JUNE 19, 2007

———————


Before POSNER, RIPPLE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Edward Griskell first applied for black lung benefits on January 19, 1976, when he was 39 years old. His claim went through several administrative iterations. Finally, the ALJ awarded benefits and the Board

affirmed. Zeigler Coal Company ("Zeigler") timely peti-
tioned for review by this court.[1] For the reasons set forth
in this opinion, we affirm the decision of the Board.

---

[1] On February 9, 2007, The St. Paul Travelers Insurance Co. ("St.
Paul") filed a Motion for Leave to Intervene with this court. In
this motion, St. Paul submits that Zeigler Coal Company
("Zeigler") and its parent company, Horizon Natural Resources
Co. ("Horizon"), were liquidated in bankruptcy proceedings in
2004 and that Zeigler's surety, St. Paul, petitioned for review on
Zeigler's behalf. St. Paul did not move to intervene in the
petition at that time. St. Paul now contends, however, that this
court's opinion in *Old Ben Coal Co. v. Office of Workers' Compensa-
tion Programs*, 476 F.3d 418 (7th Cir. 2007), establishes good
cause to excuse the untimeliness of their motion to intervene.
This court held in *Old Ben* that, because Old Ben had no
"palpable existence or successor," it was not a real party in
interest and thus dismissed the case. *Id.* at 419, 420. We stated
further that "[a]ny entity, such as an insurance company or a
surety, that would be prejudiced by an award of black lung
benefits is entitled to intervene in the administrative proceeding
with the rights of a party. 20 C.F.R. §§ 725.360(a)(4), (d). It can
seek intervention in this court as well. Fed. R. App. P. 15(d)."
*Old Ben*, 476 F.3d at 420. *Old Ben* certainly countenances inter-
vention in a case such as this, where Zeigler no longer has any
financial interest in the outcome of this case and St. Paul, as
Zeigler's surety, clearly has such an interest. St. Paul showed
good cause to intervene because, until our decision in *Old Ben*,
St. Paul had no reason to believe that intervention was neces-
sary to protect this interest. Therefore, we granted St. Paul's
motion. For convenience, because all of the briefings and other
court documents were filed prior to the granting of this motion,
we shall continue to reference Zeigler as the petitioner through-
out this opinion.

# I

# BACKGROUND

## A. Facts

Mr. Griskell began working for a coal mining company in 1960. This coal mine eventually was succeeded by Zeigler. Mr. Griskell worked in the mines until 1974 in a variety of capacities. In 1976, he filed a claim for black lung benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1977. His claim progressed through the administrative system; it was reviewed multiple times by both an administrative law judge ("ALJ") and the Benefits Review Board ("Board" or "BRB"). Finally, the Board affirmed the ALJ's award of benefits on July 11, 2005.

Before the ALJ, Mr. Griskell supported his claim with several reports that contained a diagnosis that he had probable coal workers' pneumoconiosis. He presented five positive x-ray readings for pneumoconiosis that had been read by four radiologists, all of whom were certified B-readers, and by one internist who was also a B-reader. He also submitted three medical opinions that concluded that he was disabled due to coal workers' pneumoconiosis.

First, Dr. Barnett submitted reports indicating Mr. Griskell's respiratory problems primarily were due to coal dust exposure and secondarily were due to cigarette smoking. He concluded that Mr. Griskell's pulmonary function reports indicated a moderate obstructive defect and Grade III dyspnea; these pulmonary problems rendered Mr. Griskell totally disabled. He also diagnosed Mr. Griskell with coal workers' pneumoconiosis based on chronic bronchitis and a fourteen year history of heavy exposure to coal dust while on the job. The ALJ determined

Dr. Barnett's opinion set forth his clinical observations and findings and that his reasoning was supported by adequate data. Therefore, the ALJ accorded probative weight to Dr. Barnett's opinion.

The ALJ devoted the largest portion of his opinion to a discussion of Dr. Hessl's examinations of Mr. Griskell. Dr. Hessl first examined Mr. Griskell in 1989 and determined that the miner had chronic bronchitis, mild obstructive lung disease and probable coal workers' pneumoconiosis. Dr. Hessl believed that all these conditions primarily were caused by coal dust exposure and determined their secondary etiology was Mr. Griskell's smoking history. He made similar findings when he saw Mr. Griskell in 1991 and 1993. Each time, he considered an account of Mr. Griskell's coal mine employment and smoking history and conducted a variety of medical tests. In 1996, Dr. Hessl submitted reports containing a positive diagnosis for coal workers' pneumoconiosis and chronic obstructive pulmonary disease. He further stated that the primary etiology for this diagnosis was exposure to coal dust during Mr. Griskell's coal mine employment. He determined that Mr. Griskell had mild to moderate respiratory impairment and Grade III-IV dyspnea and that Mr. Griskell was totally disabled for any work requiring physical ability, including his coal mine job. Dr. Hessl's report also included reviews of x-rays of Mr. Griskell from 1989, 1991 and 1993, all of which were negative for changes compatible with pneumoconiosis.

Dr. Hessl submitted an updated report in 1997 after again reviewing chest x-rays from 1995 and 1996, which he determined were positive for pneumoconiosis. He attributed this change to the fact that coal workers' pneumoconiosis is a chronic, progressive disease. The ALJ found Dr.

Hessl's opinions to be reasoned, documented, supported by adequate data and thus entitled to probative weight.

In order to establish rebuttal of the interim presumption of total disability accorded Mr. Griskell, Zeigler presented the reports of Drs. Andracki, Nay, Bass, Castle and Cugell to the ALJ. Zeigler also contended that the opinions of Drs. Hessl and Barnett were not well-reasoned and documented. Dr. Andracki diagnosed Mr. Griskell with mild emphysema that was not related to coal dust exposure. Dr. Andracki merely checked a box marked "no" in response to whether Mr. Griskell's emphysema was linked to coal dust exposure; the ALJ therefore determined that, because Dr. Andracki's opinion was neither reasoned nor documented, it was entitled to a lesser degree of probative weight. Dr. Bass diagnosed Mr. Griskell with insignificant obstructive pulmonary disease and determined this disease was not due to coal dust exposure. The ALJ stated that Dr. Bass did not set forth observations or findings to support his conclusions and that therefore this opinion was entitled to a lesser degree of probative weight. Dr. Nay opined that Mr. Griskell suffered from only mild bronchitis consistent with his smoking history. Noting Dr. Nay's board certification in internal medicine, the ALJ determined this opinion to be both well-reasoned and documented and thus accorded it probative weight. Dr. Castle provided a consultative opinion after examining the reports and x-rays taken and submitted by other physicians. He determined that Mr. Griskell had mild obstructive airways disease with no evidence of coal workers' pneumoconiosis. Noting Dr. Castle's credentials as a board-certified pulmonologist, the ALJ found this opinion entitled to probative weight.

Dr. Cugell, who examined Mr. Griskell, did not find evidence of coal workers' pneumoconiosis, although he did

find that Mr. Griskell suffered from chronic bronchitis. Dr. Cugell did not provide an etiology for this disease. The ALJ accorded Dr. Cugell's opinion probative weight but, because his opinion did not address the etiology of Mr. Griskell's chronic bronchitis, the ALJ did not believe the physician's opinion was sufficient to rebut the interim presumption of eligibility for benefits.

On July 22, 1974, before leaving his job with Zeigler, Mr. Griskell pleaded guilty to a charge of petty theft. This petty theft involved property belonging to the coal company. He also suffered a back injury in 1981 that required surgery.[2]

## B. Proceedings Before the ALJ and the Board

As noted previously, Mr. Griskell first applied for black lung benefits on January 19, 1976, when he was 39 years old. His claim was denied administratively on February 27, 1981. Mr. Griskell, acting pro se, requested reconsideration of his claim in December 1981. On March 26, 1982, Mr. Griskell filed a new application for benefits; he had a hearing before an ALJ on January 24, 1990. At this hearing, the Department of Labor conceded that Mr. Griskell had 15 years of coal mine employment, which met the minimum required to obtain black lung benefits. The ALJ denied this claim on April 13, 1990. On January 28, 1993, the Board issued a decision determining that Mr. Griskell's 1976 claim was still viable and remanded the case to the ALJ for further findings. In that order, the Board determined that Mr. Griskell's December 2, 1981 request for reconsideration should have been considered a petition for

---

[2] The evidence relating to Mr. Griskell's back injury comes from Mr. Griskell's statements to his healthcare professionals.

modification. The Board also determined that the ALJ should have determined whether entitlement to benefits could be established under 20 C.F.R. § 727 by inquiring whether the claimant had made a preliminary showing of total disability and therefore was entitled to the interim presumption that he was eligible for benefits.

On July 15, 1997, a new ALJ took over Mr. Griskell's case, and determined that the medical evidence in the record was sufficiently old that the parties should have an opportunity to submit updated medical evidence. After taking that evidence, the ALJ, invoking the presumption and finding it unrebutted, awarded benefits to commence retroactive to November 1989. Zeigler appealed this decision, and Mr. Griskell filed a cross-appeal asserting that the ALJ had miscalculated the date upon which the benefits should begin. On January 7, 1999, the Board vacated the ALJ's decision, and on April 27, 1999, the ALJ reinstated benefits to begin retroactive to September 1, 1993, invoking the interim presumption and finding that Zeigler had failed to rebut this presumption. On September 7, 2000, the Board affirmed in part and vacated in part the ALJ's decision, requesting that the ALJ reassess the medical opinions on remand. The Board then denied Zeigler's motion to reopen the record on December 6, 2000. On remand on May 24, 2001, the ALJ denied Mr. Griskell's claim, finding that his disability was completely due to his 1981 back injury and not pneumoconiosis. Mr. Griskell appealed this ruling on June 12, 2002 and the Board reversed in part and vacated in part the ALJ's decision, instructing the ALJ to consider rebuttal evidence on remand. Zeigler appealed this decision and on September 7, 2002, the Board vacated the award of benefits, but did not disturb the September 1, 1993 date of onset determina-

tion. The Board stated that Mr. Griskell was entitled to the interim presumption, but stated that the ALJ should have considered rebuttal evidence before making the final determination to award benefits.

Then, on January 29, 2004, the ALJ again awarded benefits, finding that Mr. Griskell was entitled to the interim presumption and that Zeigler failed to rebut this presumption. In this order, the ALJ determined the date of onset to be December 1981; the date of onset is determined by 20 C.F.R. § 725.503(b) (2000), which states that the date of onset of benefits shall correspond with the date of onset of total disability due to pneumoconiosis. If the record does not establish that date, then benefits are payable from the month in which the claim was filed. Mr. Griskell filed his claim for benefits in January 1976. His subsequent letter of December 1981 was construed as a request for modification; therefore, the ALJ determined his date of onset for purposes of benefits eligibility was December 1981. The Board affirmed this decision of the ALJ on July 11, 2005. Zeigler timely petitioned for review on January 16, 2006.[3]

---

[3] Zeigler, in the argument portion of its brief, refers and cites to the 2001 and 1999 ALJ opinions rather than the most recent opinion issued on January 29, 2004. *See* Appellant's Br. at 19 (referencing the ALJ's 2001 opinion); Appellant's Br. at 28 (citing the ALJ's 1999 opinion). However, as evidenced by Zeigler's recitation of the procedural history in this case, Zeigler is aware of the most recent ALJ opinion and Board affirmation. *See* Appellant's Br. at 8, 9 ("On January 24 [sic], 2004, the ALJ again awarded benefits" . . . "The Benefits Review Board affirmed that decision on July 11, 2005."). Furthermore, Zeigler articulates substantive arguments consistent with an appeal of the most

(continued...)

## II

## DISCUSSION

When the Board upholds the decision of the ALJ, it is our task to review the ALJ's judgment. *See, e.g., Peabody Coal Co. v. Shonk*, 906 F.2d 264, 267 (7th Cir. 1990). This court must review the decision of the ALJ to

> determine if it was rational, supported by substantial evidence on the record as a whole, and not contrary to law. Substantial evidence is that which a reasonable mind might accept as adequate to support a particular conclusion. We may not set aside an inference simply because we find the opposite conclusion more reasonable or question the factual basis. Making credibility determinations and resolving inconsistencies in the evidence is within the sole province of the ALJ.

*Kennellis ENergies, Inc. v. Hallmark*, 333 F.3d 822, 826 (7th Cir. 2003) (internal citations omitted). If the decision of

---

[3] (...continued)
recent ALJ and Board decisions. Because a party may obtain review of a final Board order in the United States Court of Appeals in whose jurisdiction the injury occurred only within sixty days following the issuance of the Board's order, a challenge to the 2001 and 1999 ALJ opinions is untimely. *See, e.g., Arch Mineral Corp. v. Office of Workers' Comp. Programs, United States Dep't of Labor*, 798 F.2d 215, 217 (7th Cir. 1986) (citing 33 U.S.C. § 921(c)). Zeigler filed its notice of appeal with this court on January 16, 2006. The substance of Zeigler's arguments address the sufficiency of the evidence necessary both to invoke and rebut the interim presumption. Therefore, we proceed as though Zeigler properly challenges the most recent decision of the ALJ and conclude that Zeigler's petition for review was timely filed.

the ALJ meets these requirements, we shall affirm the decision of the Board. *See Shonk*, 906 F.2d at 267. We review pure questions of law de novo. *See, e.g.*, *Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 483 (7th Cir. 2001).

## A. Invocation of the Interim Presumption

The Black Lung Benefits Act ("BLBA") affords benefits only if pneumoconiosis, known colloquially as "black lung disease," prevents a coal miner from performing his job at the coal mine. 30 U.S.C. § 902(f)(1)(A).[4] The governing regulations establish an "interim presumption" of total disability for a miner who can demonstrate disability due to pneumoconiosis. 20 C.F.R. § 727.203(a) (4); *see also Gulley v. Dir., Office of Workers' Comp. Programs, United States Dep't of Labor, et al.*, 397 F.3d 535, 538 (7th Cir. 2005).

---

[4]  30 U.S.C. § 902 (f)(1)(A) provides:

> (f)(1) The term "total disability" has the meaning given it by regulations of the Secretary of Health and Human Services for claims under part B of this subchapter, and by regulations of the Secretary of Labor for claims under part C of this subchapter, subject to the relevant provisions of subsections (b) and (d) of section 923 of this title, except that—

>> (A) in the case of a living miner, such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time[.]

This "interim presumption" applies to claims for black lung benefits filed between July 1, 1973, and April 1, 1980.[5] *See Mullins Coal Co. v. Dir., Office of Workers' Comp. Programs, United States Dep't of Labor, et al.*, 484 U.S. 135, 137 (1987). In order to invoke the rebuttable presumption in the case of a living miner, the claimant must have been engaged in coal mine employment for at least ten years and meet one of the physical conditions set forth in the regulation.[6] Zeigler conceded that Mr. Griskell had worked in the

---

[5] The black lung benefits program was developed through several statutory enactments and thus various rules govern individual claims depending upon when the initial claim was filed. *See Mullins Coal Co. v. Dir., Office of Workers' Comp. Programs, United States Dep't of Labor*, 484 U.S. 135, 138 n.1 (1987).

[6] 20 C.F.R. § 727.203(a) provides:

(a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title);

(2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in § 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than the values specified in the following table:

(continued...)

---

[6] (...continued)

|                          | Equal to or less than— | |
| --- | --- | --- |
|                          | FEV | MVV |
| 67″ or less. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2.3 | 92 |
| 68″. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2.4 | 96 |
| 69″. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2.4 | 96 |
| 70″. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2.5 | 100 |
| 71″. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2.6 | 104 |
| 72″. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2.6 | 104 |
| 73″ or more. . .. . . . . . . . . . . . . . . . . . . . . . . | 2.7 | 108 |

(3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than the values specified in the following table:

|                          | Arterial $pCO_2$ equal to or less than (mm.Hg.) |
| --- | --- |
| *Arterial $pO_2$.* | |
| 30 or below. . . . . . . . . . . . . . . . . . . . . . . . . | 70 |
| 31. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 69 |
| 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 68 |
| 33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 67 |
| 34. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 66 |
| 35. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 65 |

(continued...)

coal mines for fourteen years.[7] Therefore, in order to find that Mr. Griskell merited the interim presumption, the ALJ only needed to find that he met one of the medical requirements set forth in the regulation.

Zeigler submits that it was error for the ALJ to invoke the interim presumption of total disability under 20 C.F.R. § 727.203(a). Zeigler attempts to support this contention with two arguments. Zeigler submits that the ALJ improperly weighed the opinions of the various physicians, impermissibly according too much weight to the opinions of Dr. Hessl and too little weight to the opinions of some of the other physicians who reached a different conclu-

---

[6] (...continued)

| | |
|---|---|
| 36. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 64 |
| 37. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 63 |
| 38. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 62 |
| 39. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 61 |
| 40-45. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 60 |
| Above 45. . . . . . . . . . . . . . . . . . . . . . . . . . . . | Any value. |

> (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment;
>
> (5) In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment.

[7] *See* Petitioner's Br. at 10.

sion regarding the etiology of Mr. Griskell's impairment. Zeigler also contends that Mr. Griskell was disabled due to a back injury and prevented from working due to his criminal conduct, not as a result of pneumoconiosis.

We have stated that "[w]hether a medical opinion is reasoned . . . is a decision that rests ultimately with the ALJ, not with us." *Summers*, 272 F.3d at 483. Furthermore, the ALJ needs only to be persuaded, judging from all available evidence, that pneumoconiosis is a contributing cause of the miner's disability. *Compton v. Inland Steel Coal Co.*, 933 F.2d 477, 483 (7th Cir. 1991). In determining whether substantial evidence supports the ALJ's determinations regarding Mr. Griskell's benefits "[w]e cannot reweigh the evidence or make credibility determinations." *Peabody Coal Co. v. Vigna*, 22 F.3d 1388, 1393 (7th Cir. 1994).

Zeigler submits that the ALJ improperly gave additional weight to Dr. Hessl's opinion merely because Dr. Hessl was Mr. Griskell's treating physician. We "have disapproved any mechanical rule that the views of a treating physician prevail." *Peabody Coal Co. v. McCandless*, 255 F.3d 465, 469 (7th Cir. 2001). However, the fact that a particular opinion comes from a treating physician certainly does not bar an ALJ from crediting this opinion. We simply stated in *McCandless* that "the treating physician's views may not be accepted unless there is a good reason to believe that they are accurate." 255 F.3d at 469-70. Conversely, when the views of the treating physician are accurate and supported by medical evidence, those views may be accepted.

We have acknowledged that, in selecting from opposing medical viewpoints, the ALJ instead "'must have a *medical* reason for preferring one physician's conclusion over another's.'" *Stalcup v. Peabody Coal Co.*, 477 F.3d 482, 484

(7th Cir. 2007) (quoting *McCandless*, 255 F.3d at 469) (emphasis in original). We think it clear that the ALJ properly weighed the various medical opinions, and we therefore conclude that his decision to invoke the interim presumption is supported by substantial medical evidence. In his decision, the ALJ stated that "[t]hroughout his opinions, Dr. Hessl set forth clinical observations and findings, and his reasoning is supported by adequate data. His opinions are reasoned and documented. I find that Dr. Hessl's opinion is entitled to probative weight enhanced by his board-certification in internal medicine." A.R. at 146. The ALJ also stated that Dr. Hessl's reports demonstrate "superior reasoning." A.R. at 147.

The ALJ's conclusions regarding Dr. Hessl also find support in the record. In his reports, Dr. Hessl took an extensive medical history and described in detail Mr. Griskell's chief complaints and symptoms. Relying on chest x-rays, ventilation studies, arterial blood gas studies, an EKG and a GXT, Dr. Hessl diagnosed Mr. Griskell with chronic bronchitis and coal workers' pneumoconiosis. His reports stated that the primary etiology for both diagnoses was coal dust exposure, and that the secondary etiology was tobacco use. The ALJ was on solid ground in characterizing Dr. Hessl's reports as well-reasoned and as reflecting a careful examination of Mr. Griskell and a thoughtful evaluation of diagnostic tests. It is clear that the ALJ did not credit Dr. Hessl's medical opinions merely because he was a treating physician.

Furthermore, substantial evidence clearly supports the ALJ's decision to invoke the interim presumption of total disability. The ALJ explicitly stated that he was according more weight to Dr. Hessl's opinion based on "the strength of his reasoning." *Id.* Though Zeigler fervently

contends that the ALJ was engaging in impermissible "head counting," it is not the role of this court to reweigh evidence or to make credibility determinations. The ALJ clearly found Dr. Hessl to be credible, and Dr. Hessl's opinions demonstrate that Mr. Griskell is totally disabled due to pneumoconiosis. These conclusions do not rely solely on Dr. Hessl's status as a treating physician, but rather draw from the well-reasoned reports he prepared. Indeed, in a similarly well-reasoned report, Dr. Barnett concluded that Mr. Griskell is totally disabled due to coal workers' pneumoconiosis. We have no trouble concluding that there is substantial evidence in the record to support invocation of the interim presumption that his total disability is due to coal workers' pneumoconiosis.

## B. Rebuttal of the Interim Presumption

Zeigler further submits that the interim presumption was rebutted, and, therefore, it was error to award benefits to Mr. Griskell. The regulations provide four means by which an employer may rebut the interim presumption.[8] If the evidence establishes that the total disability of the miner did not arise in whole *or in part* out of coal mine

---

[8] The first two means by which an employee may rebut the interim presumption, by (1) demonstrating that the miner is engaged in his usual coal mine or comparable work; or (2) showing that he is capable of performing his usual or comparable duties, 20 C.F.R. § 727.203(b), are not available to Zeigler in this case. It is uncontested, on this record, that Mr. Griskell no longer works in a coal mine and further that he is disabled permanently. Therefore, we consider only the third and fourth means by which Zeigler may rebut the interim presumption in this opinion.

employment, the presumption is rebutted. 20 C.F.R. § 727.203(b)(3). If the evidence establishes that the miner does not have pneumoconiosis, the interim presumption also falls. 20 C.F.R. § 727.203(b)(4). The employer bears the burden of presenting evidence to rebut the interim presumption by a preponderance of the evidence. 20 C.F.R. § 727.203(b). Therefore, Zeigler must demonstrate either that Mr. Griskell's disability is not due in whole or in part to his exposure to coal dust or that he in fact does *not* have pneumoconiosis. *See Vigna*, 22 F.3d at 1393.

Zeigler submits that Mr. Griskell ceased working in the coal mines because he stole from his employer and not due to pneumoconiosis.[9] Though Mr. Griskell may have been fired from Zeigler due to this theft, the regulations require only that the *disability* of the miner arise *in part* out of coal mine employment. 20 C.F.R. § 727.203(b)(3). Therefore, even if Mr. Griskell was fired for stealing from Zeigler, this does not preclude the possibility that Mr. Griskell is disabled permanently by pneumoconiosis as required under the BLBA. This evidence might explain why Mr. Griskell's employment *with Zeigler* was terminated, but, on this record, Mr. Griskell is incapable of working at *any* coal mine due to his pneumoconiosis.

Zeigler also claims that Mr. Griskell was totally disabled by a back injury and not by pneumoconiosis. We must bear in mind, however, that the miner's pneumoconiosis need be only a "contributing cause of his total disability." *Shonk*, 906 F.2d at 271-72 (internal citations and quotation marks omitted); *see also Compton*, 933 F.2d at 483 (stating that "so long as the ALJ concludes that, based on the medical

---

[9] Appellant's Br. at 22.

evidence, pneumoconiosis is a contributing cause of a miner's disability, the miner will recover benefits").

Zeigler relies upon two decisions of this court in support of its contention that, because Mr. Griskell suffered a back injury, he is ineligible to receive black lung benefits. *See Vigna*, 22 F.3d at 1394 (holding that a miner disabled by stroke could not receive benefits under the BLBA where medical opinions in the record cited the stroke as the cause of the miner's disability); *see also Freeman United Coal Mining Co. v. Foster*, 30 F.3d 834, 839 (7th Cir. 1994) (involving medical evidence demonstrating that miner was not disabled by respiratory impairments but rather that disability was due to only a back injury). Unlike *Vigna* and *Foster*, the medical evidence in this record, as discussed above, supports the contention that Mr. Griskell has been disabled permanently due to pneumoconiosis. Dr. Castle prepared an independent medical review of Mr. Griskell on March 4, 1996, in which he stated that "[Mr. Griskell] may be disabled because of back problems and coronary artery disease." Employer's Ex. No. 29, Hearing July 15, 1997, at 1. This statement alone does not suffice to rebut the presumption of total disability due to pneumoconiosis. As we have stated above, the record contains more than ample evidence that pneumoconiosis contributed to Mr. Griskell's permanent disability. Zeigler, therefore, has failed to demonstrate affirmatively the proposition that Mr. Griskell was permanently disabled by his back injury. The ALJ, crediting the opinions of Drs. Hessl and Barnett, concluded that Mr. Griskell was disabled, at least in part, due to pneumoconiosis. We find this determination to be supported by substantial evidence.

Finally, we see no problem in the ALJ's determination of the date of onset of Mr. Griskell's disability as December

1981. This determination is governed by 20 C.F.R. § 727.503, which provides that benefits are payable from the date of onset of total disability due to coal workers' pneumoconiosis. The ALJ noted correctly that the record does not establish the exact date of onset of Mr. Griskell's total disability due to pneumoconiosis. Mr. Griskell filed his initial claim for benefits with the United States Department of Labor in January 1976. Although the Department of Labor initially found Mr. Griskell was entitled to benefits, it subsequently notified him that, due to Zeigler's submission of an additional medical examination, it was reversing the award of benefits. Mr. Griskell sought review of this claim in December 1981. On January 28, 1993, the Board determined that Mr. Griskell's December 1981 letter should have been treated as a request for modification. The regulations state that the date of request for modification controls when determining the date upon which benefits commence. 20 C.F.R. § 725.503(b). Therefore, the ALJ appropriately determined December 1981 to be the date of onset.

## C. Evidence on the Progressivity or Latency of Coal Workers' Pneumoconiosis

Finally, Zeigler contends that the ALJ impermissibly declined to admit evidence regarding the progressivity or latency of coal workers' pneumoconiosis. We previously have held that both the latency and progressivity of coal workers' pneumoconiosis are legislative facts. *See Peabody*

*Coal v. Spese,* 117 F.3d 1001, 1010 (7th Cir. 1997)[10] ("In the end, the question whether simple pneumoconiosis can progress in the absence of further exposure to coal dust is a question of legislative fact.") (citing *Menora v. Illinois High Sch. Ass'n*, 683 F.2d 1030, 1036 (7th Cir. 1982)). We also have stated that "[t]he Director . . . has long believed in the progressivity of pneumoconiosis," and have noted that the Board found that "pneumoconiosis is a progressive and irreversible disease." *Id.* (internal citations and quotation marks omitted). Furthermore, a claimant is not required to prove that he suffers from the specific varieties of pneumoconiosis the medical literature has found to be progressive or latent. *Midland Coal Co. v. Dir., Office of Workers' Comp. Programs, et al.*, 358 F.3d 486, 490-91 (7th Cir. 2004). We therefore conclude that the ALJ did not err in declining to admit evidence on latency and progressivity.

## Conclusion

For these reasons, we deny the petition for review and affirm the decision of the Board.

PETITION DENIED; DECISION AFFIRMED

---

[10] We note that this court in *Peabody Coal v. Spese*, 117 F.3d 1001, 1010 (7th Cir. 1997) interpreted an earlier version of the regulations. However, the revised regulation explicitly codified the holding in *Spese*. *See Midland Coal Co. v. Dir., Office of Workers' Comp. Programs*, 358 F.3d 486, 489-90 (7th Cir. 2004) (citing 65 Fed.Reg. 79,920, 79,974 (Dec. 20, 2000)).

No. 06-1248                                           21

A true Copy:

　　　Teste:

　　　　　　　　　　　　_____
　　　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　　　*Appeals for the Seventh Circuit*